**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ABERA GEBRU,                          :
                                      :
     Plaintiff,                      :
                                      :
v.                                    :     CIVIL ACTION NO.
                                      :     1:13-CV-03376-RWS
CITY OF ATLANTA,                      :
DAVID MATTESON,                       :
individually,                         :
WILLIAM KELLNER,                      :
individually, and                     :
ADAM WRIGHT, in his official          :
capacity,                             :
                                      :
     Defendants.                     :

## <u>ORDER</u>

This case is before the Court on Defendants' Motion to Dismiss [24][1].

After reviewing the record, the Court enters the following Order.

## **Background**[2]

---

[1] The Court will refer to "Defendants' Motion to Dismiss," but Defendants' Motion only addresses claims against Defendants City of Atlanta, Kellner, and Wright. The Court therefore considers each claim insofar as it involves those Defendants. All claims against Defendant Matteson are still pending.

[2] As this case is before the Court on a motion to dismiss, the Court accepts as true all well-pleaded facts in the First Amended Complaint [23]. <u>Cooper v. Pate</u>, 378 U.S. 546 (1964).

On the evening of October 14, 2011, Plaintiff stepped outside of the Black Lion Café at 253 Auburn Avenue, Atlanta, Georgia (the "Cafe") to "warn away a woman who was drinking on the sidewalk and harassing customers." ([23] at 4.) Plaintiff continued walking east on Auburn Avenue to assist customers in finding safe parking for the Café. Around 12:15 A.M., Defendants Kellner and Matteson, officers with the Atlanta Police Department ("APD"), approached the intersection immediately east of the Café in an unmarked vehicle. Kellner and Matteson observed Plaintiff assisting customers. ([23] at 4-5.)

The officers stopped in the middle of Auburn Avenue and exited the vehicle. Defendant Matteson then grabbed Plaintiff's body and "[forced Plaintiff] to place his hands on the police vehicle." ([23] at 5.) While forcing Plaintiff onto the vehicle, Defendant Matteson yelled obscenities at Plaintiff. Defendant Matteson then "manually search[ed] the inside of [Plaintiff's] undergarments with gloved hands, [and] manipulat[ed]" Plaintiff's genitals. Then Defendant Matteson searched Plaintiff's pockets and used a flashlight to look inside Plaintiff's underwear. ([23] at 5-6.) No illegal contraband was found, but Plaintiff was placed in handcuffs by Defendant Matteson. After

2

Plaintiff was handcuffed, Defendant Matteson found a broken beer bottle on the ground in a heavily littered area and suggested it could be Plaintiff's. (Id.)

Defendant Kellner observed this process and at no time intervened or interfered with the search conducted by Defendant Matteson. Defendant Kellner was listed as the "arresting officer" in Plaintiff's case and he cited Plaintiff for drinking in public in violation of Atlanta Municipal Code § 10-8. ([23] at 7.) However, Plaintiff had not consumed any alcohol and the bottle found did not belong to him. ([23] at 7-8.) Defendants Kellner and Matteson, despite being asked by Plaintiff, did not administer a breath analysis test or a blood exam and did not interview any of the witnesses who were with Plaintiff while Plaintiff was detained and searched. ([23] at 9.)

Plaintiff requested that a supervising officer be brought to the scene and Defendant Wright arrived shortly thereafter. ([23] at 10.) Defendant Wright did not interview any witnesses or investigate Plaintiff's complaints, but instructed the other officers to take Plaintiff to jail. (Id.) Plaintiff was detained overnight in the City of Atlanta Pretrial Detention Center. ([23] at 12.) Three days later, on October 17, 2011, Plaintiff's request for an investigation into the conduct of Defendants Matteson and Kellner was granted by the Atlanta Citizen Review

3

Board ("ACRB"). ([23] at 15.) The ADP Office of Professional Standards

("OPS") also opened its own investigation. ([23] at 16.)

During the course of the ACRB and OPS inquiries, Defendants Matteson

and Kellner provided conflicting statements regarding what they witnessed on

the evening of Plaintiff's arrest. (See [23] 16-21.) After providing statements to

the contrary, Defendant Matteson finally admitted that he did not see Plaintiff

drinking an alcoholic beverage and was terminated by the APD "for violating

APD Standard Operating Procedure 4.1.03 'Truthfulness.'" ([23] at 17.)

Defendant Kellner stated that he could not remember what he saw, despite

previously claiming he saw Plaintiff holding an alcoholic beverage. Two weeks

later, Defendant Kellner stated that he observed Plaintiff drinking. However,

this final statement indicated deception during Kellner's Voice Stress Analysis

interview. ([23] at 17, 18, 21-22.) Defendant Kellner was subsequently

disciplined after OPS found that he did not have probable cause to arrest

Plaintiff. ([23] at 22-23.)

Plaintiff was brought before the City of Atlanta Municipal Court on

February 7, 2012, but the case against Plaintiff was dismissed because

Defendant Kellner was not present to testify. ([23] at 14.) On October 10, 2013,

4

Plaintiff filed suit against Defendants. Plaintiff filed his Amended Complaint on February 28, 2014, and Defendants filed the present Motion to Dismiss on March 6, 2014. As amended, Plaintiff's Complaint seeks damages related to: unreasonable search and seizure (Count A); false imprisonment and false arrest under Georgia law against Defendants Kellner, Matteson, and Wright (Count B); battery and sexual battery under Georgia law against Defendant Matteson (Counts C and D); and abuse in being arrested by Defendants Kellner and Matteson (Count E). Plaintiff also seeks punitive damages and bad-faith fees and expenses against Defendants Kellner and Matteson (Counts F and G).

## Discussion

### I.  Legal Standard - Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient

5

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."  D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part

of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed' means that the authenticity of the document is not challenged."  Id.  The Court next considers each motion to dismiss and the respective claims against each Defendant.

## II. Analysis

Defendants filed a Motion to Dismiss based on the original Complaint on February 07, 2014 [14]. Defendants subsequently filed this Motion to Dismiss [24] in response to Plaintiff's Amended Complaint [23]. Thus, Defendant's first Motion to Dismiss [14] is **DENIED as moot**, and the Court now considers the merits of the later motion.

7

A.      Federal Constitutional Claims Against Defendants Kellner and Matteson (Count A)

Under 42 U.S.C. § 1983, individuals are provided a "federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States." Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990) (citations omitted).  Further, "[a]n individual's right to be free from unlawful arrest and imprisonment implicates a liberty interest indisputably protected by the Constitution and federal laws, the violation of which may give rise to a cause of action under § 1983." Motes v. Myers, 810 F.2d 1055, 1059 (11th Cir.1987) (citations omitted). Under the Fourth Amendment (applicable to states via the Fourteenth Amendment), individuals have a right not to be arrested without probable cause. Von Stein, 904 F.2d at 578 (citations omitted). Probable cause exists when a law enforcement officer has knowledge of "reasonably trustworthy information [which] would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. The existence of probable cause to arrest is determined by an objective standard based on the "totality of

8

the circumstances." United States v. Hastamorir, 881 F.2d 1551, 1555 (11th Cir. 1989) (citations omitted).

Defendants assert that Defendant Kellner is entitled to qualified immunity from Plaintiff's § 1983 claim. Under the doctrine of qualified immunity, government officials who are acting within their discretionary authority are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rushing v. Parker, 590 F.3d 1263, 1265 (11th Cir. 2010). The contours of the right allegedly violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Von Stein, 904 F.2d at 579 (citations and internal quotations omitted).

To determine whether qualified immunity applies in cases involving an alleged unlawful search and arrest, "the issue is not probable cause in fact but arguable probable cause." Von Stein, 904 F.2d at 579 (citation and internal quotation marks omitted). The standard for *arguable* probable cause is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that

9

probable cause existed in the light of well established law." <u>Gold v. Miami</u>, 121 F.3d 1442, 1445 (11th Cir. 1997) (citation omitted) (emphasis in original).

Plaintiff alleges he was walking on a sidewalk with other business patrons when Defendants Kellner and Matteson approached and arrested him. Plaintiff claims he was subjected to an invasive search by Defendant Matteson and was placed under arrest without any probable cause. Notably, as alleged by Plaintiff, the arrest occurred *before* Defendants Matteson and Kellner possessed any "trustworthy information" that would have indicated that a crime had been committed or was about to be committed. The Court finds that a reasonable officer in the Defendants' position would not have any reason to believe that probable cause existed to arrest Plaintiff.[3]

Plaintiff was arrested for "Drinking in Public." However, Plaintiff alleges he was not drinking, had not been drinking, and did not have any paraphernalia on his person which would have given rise to probable cause for his arrest.

---

[3] Plaintiff's allegations are similar to those in <u>Brown v. Texas</u>, 443 U.S. 47 (1979). In <u>Brown</u>, a man was stopped, frisked, and arrested after officers spotted him and another individual walking away from one another in a 'high drug problem area.' The Supreme Court, reversing the appellant's misdemeanor conviction, noted that there was no indication in the record that it was unusual for people to be in the area and that "[i]n short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood." <u>Id.</u> at 52.

AO 72A
(Rev.8/82)

Defendants argue that the presence of a broken beer bottle in the vicinity of the

Plaintiff is enough to find arguable probable cause existed. (Def.'s Mem., Dkt.

[24] at 19.) Defendants also argue that Plaintiff has not sufficiently alleged

Defendant Kellner's role in the arrest such that he can be held liable. ([24] at

18.) Defendants' first argument fails in light of the facts alleged in the Amended

Complaint. Specifically, Plaintiff alleges that the broken bottle was discovered

in an area "heavily littered with debris" by Defendant Matteson *after the arrest*

and did not belong to Plaintiff at any point. ([23] ¶ 31.) Therefore, the broken

bottle cannot support a finding of probable cause or arguable probable cause at

the time of Plaintiff's arrest.[4]

As for Defendant Kellner's involvement, Plaintiff has shown that

Defendant Kellner was the "arresting officer" who wrote the citation and was

the sole witness called for Plaintiff's trial. ([23] at 7, 13.) Thus, Plaintiff has

alleged sufficient facts at this stage to show that Defendant Kellner participated

---

[4] Defendants do not argue that the detention of Plaintiff was anything other
than an arrest, and Plaintiff has alleged that the invasive search and handcuffing
amounted to a "full-scale arrest." (Pl.'s Mem., Dkt. [27] at 15.) Both the arrest and the
search incident to the arrest required probable cause because the search may not
"precede the arrest and serve as part of its justification." Sibron v. New York, 392
U.S. 40, 67 (1960).  Based on Plaintiff's allegations, he was under arrest and subjected
to the search prior to the existence of probable cause or arguable probable cause.

11

in the alleged unlawful *seizure*. Defendants' focus on Defendant Kellner's non-

participation in the search of Plaintiff's person fails to account for his

participation in the actual arrest.

In sum, the Court finds that the Amended Complaint contains sufficient

facts to support Plaintiff's allegation that Officer Kellner conducted an arrest

without probable cause.  Such an arrest is in violation of a "clearly established"

constitutional right. See Herren v. Bowyer, 850 F.2d 1543, 1547 (11th Cir.

1988) (noting that the law is "clearly established that an arrest

without...probable cause...violates the fourth amendment") (citations omitted

and internal quotations omitted). Accordingly, Defendants' motion to dismiss

Plaintiff's federal constitutional claims against Defendant Kellner is **DENIED**.

B.    Federal Constitutional Claims Against Defendants Wright and City
      of Atlanta (Count A)

Municipalities may be held liable under § 1983 in a limited number of

circumstances. Monell v. New York City Dept. of Soc. Serv.s, 436 U.S. 658

(1978). "[A] municipality cannot be held liable *solely* because it employs a

tortfeasor–or in other words, a municipality cannot be held liable under § 1983

on a *respondeat superior* theory." Id. at 690. However, "[l]ocal governing

12

bodies...can be sued directly under § 1983...where...the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. Municipalities may also be sued under § 1983 for constitutional deprivations "visited pursuant to governmental 'custom,'" even if that custom has not "received formal approval through the body's official decisionmaking channels." Id. at 691.

In order to hold Defendant Wright and the City of Atlanta liable here, Plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom *caused* the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted) (emphasis added). The causation element requires a showing that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Com'rs v. Brown, 520 U.S. 397 (1997) (emphasis removed). In cases where the "municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." Id. at 404 (emphasis in original).

Plaintiff claims that the alleged unlawful search and arrest were conducted pursuant to City of Atlanta's "regulations that encouraged and condoned illegal seizures, frisks, arrests and searches." ([23] ¶ 160.) To support this claim, Plaintiff cites two APD Standard Operating Procedures which "authorized and instructed officers to detain and frisk individuals during voluntary encounters without regard to reasonable articulable suspicion" and "authorized officers to perform warrantless searches without probable cause." ([23] ¶¶ 162-163.) Plaintiff asserts that Defendant City of Atlanta "requires all officers to familiarize themselves with Standard Operating Procedures of the department." ([23] ¶ 161.)

Construing the facts in a light most favorable to Plaintiff, the City's operating procedures appear to be unconstitutional on their face. Notably, Defendants do not dispute Plaintiff's characterization of APD's policies. The Supreme Court has found that facially unconstitutional or illegal policies, *by themselves*, fulfill the causation requirement under Monell. Therefore, Plaintiff has alleged sufficient facts against City of Atlanta to establish its potential

14

liability under § 1983 for the allegedly unlawful search and seizure conducted by the Defendant Officers.[5]

Plaintiff's alternative theory regarding Defendant City of Atlanta's § 1983 liability is based on a failure to train. Plaintiff cites an independent review of APD's officer training program which found that "APD officers had received no training concerning constitutional law" and "recommended that [APD] conduct training regarding Fourth Amendment issues including but not limited to 'Terry' stops." ([23] at 33.) Plaintiff alleges that the "APD Chief of Police officially rejected the training recommendation" of the independent review board. ([23] at 33.) Plaintiff also alleges that Defendants Kellner, Matteson, and Wright were employed during the period of the independent review. Id.

In order to succeed on his failure to train theory, Plaintiff must present sufficient facts that, if true, would plausibly suggest a "continued adherence to an approach [a municipality] know[s] or should know fail[s] to prevent tortious

---

[5] In their Reply Brief, Defendants argue that the fact that Defendant Officers lied in an attempt to show probable cause is evidence that their conduct was not "caused" by the City's policies. ([28] at 2-3). While this evidence may create an issue of fact in the case, the evidence does not warrant dismissal. The Court is required, in considering a motion to dismiss, to accept the allegations in the Complaint as true and construe inferences therefrom in the light most favorable to Plaintiff.

15

conduct by employees." <u>Brown</u>, 520 U.S. at 407 (internal quotations and punctuation omitted). The "failure to train in a relevant respect [must amount] to deliberate indifference to the constitutional rights of persons with whom the police come into contact." <u>Canton v. Harris</u>, 489 U.S. 378, 379 (1989). According to the Eleventh Circuit, liability will only attach where: "the municipality inadequately trains or supervises it employees, this failure to train or supervise is a city policy, and that policy causes the employees to violate a citizen's constitutional rights." <u>Gold v. Miami</u>, 151 F.3d 1346, 1350 (1998) (citations omitted).

There are two potential routes a plaintiff might follow in alleging a failure to train claim. First, "it may happen that in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that policymakers' deliberate indifference to the constitutional rights of others may be inferred. <u>Id</u> at 390. Second, a plaintiff may present evidence of a pattern of prior constitutional violations of which a municipality is aware such that the municipality's choice not to take action constitutes deliberate

AO 72A
(Rev.8/82)

indifference to the constitutional rights of its citizens. <u>See generally</u> <u>Gold</u>, 151 F.3d 1346.

Plaintiff's failure to train claim is premised on the findings and recommendations of the ACRB and the refusal to follow such recommendations by Defendant City of Atlanta.[6] At this stage, the Court finds that Plaintiff has plead sufficient facts to support a theory of inadequate training in an area where the need is "so obvious" that deliberate indifference may be inferred.

In <u>Canton</u>, the Supreme Court gave an example of such "obviousness:" where "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons" and where officers have been armed "in part to allow them to accomplish this task," there exists a "need to train officers in the constitutional limitations on the use of deadly force." 489 U.S. 378 n.10. In contrast, in <u>Brown</u>, the Supreme Court rejected a failure to train argument.  520 U.S. 397.  There, a municipality was sued on a failure to train

_____

[6] Plaintiff also cites a history of settlements between City of Atlanta and other individuals.  However, the settlements do not support Plaintiff's argument because Plaintiff has not pled enough facts to show a connection between the factual scenarios of the settled cases and Plaintiff's claims. And as Defendants note, such settlements "could have been done by the City's attorneys for a number of strategic reasons." ([24] at 10.)

17

theory after respondent was physically injured during a routine traffic stop and discovered that the sheriff's department inadequately screened the background of the deputy conducting the stop. The deputy had formerly pled guilty to several driving infractions as well as assault and battery. The Supreme Court determined that the causal relationship between the sheriff's failure to screen and the particular injury was too tenuous.  Id.

In Brown, the Court stated: "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify" a finding of deliberate indifference to an "obvious" consequence. 520 U.S. at 409. The Court emphasized that "the high degree of predictability may also support an inference of causation." Id. at 410. Here, violations of citizens' constitutional rights are a "highly predictable consequence" of the City's failure to provide *any* constitutional law training, particularly with respect to recurring and common situations involving searches and seizures, and where an independent review board identified the need for training in Fourth Amendment issues. Therefore, Plaintiff's failure to train theory also supports a finding that City of Atlanta may be liable for the alleged constitutional violations committed by the

AO 72A
(Rev.8/82)

Defendant Officers. Accordingly, Defendants' motion to dismiss Plaintiff's constitutional claims against City of Atlanta is **DENIED**.

Plaintiff also asserts his constitutional claims against Defendant Wright in his official capacity. As Defendants note, however, a suit against individuals in their "official capacity" is "in actuality, a suit against the local government entity that the individuals represent." ([24] at 5.) Where suits are brought against both a municipality and an officer in his or her official capacity "there no longer exists a need to bring official capacity actions" because it would be redundant. Busby v. Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Consequently, Plaintiff's § 1983 claim against Defendant Wright in his official capacity is **DISMISSED**.[7]

C.   State Law and State Constitution Claims Against Defendant Wright in His Official Capacity (Count B)

The Court again notes that "suits against public employees in their official capacities are in reality suits against the state." Therefore, Defendant Wright, in his official capacity, may invoke sovereign immunity. Cameron v.

---

[7]In both the original and Amended Complaint, Plaintiff specified that Defendant Wright is being sued in his official capacity (while also specifying that Defendants Matteson and Kellner are being sued in their individual capacities). Thus, the Court finds this designation was not inadvertent.

19

Lang, 549 S.E.2d 341, 346 (Ga. 2001). "The doctrine of sovereign

immunity...protects all levels of governments from legal action unless they have

waived their immunity from suit." Id. See also O.C.G.A. § 36-33-1 ("it is the

public policy of the State of Georgia that there is no waiver of sovereign

immunity of municipal corporations of the state and such municipal

corporations shall be immune from liability for damages). Plaintiff has the

burden of establishing waiver of sovereign immunity, Scott v. Valdosta, 634

S.E.2d 472 (Ga. Ct. App. 2006), but has not alleged any such waiver here.

Therefore, all state law and state constitutional claims asserted against

Defendant Wright in his official capacity are **DISMISSED**.

>D.>State Law and State Constitutional Claims Against Defendant
>Kellner

>*1.*>*Official Immunity*

Defendants contend that Plaintiff cannot successfully bring state law or

state constitutional claims against Defendant Kellner because Kellner is entitled

to official immunity. In Georgia:

>[A]ll officers and employees of the State or its
>departments and agencies may be subject to suit
>and may be liable for injuries and damages
>caused by the negligent performance of, or

20

> negligent failure to perform, their ministerial
> functions and may be liable for injuries and
> damages if they act with actual malice or with
> actual intent to cause injury in the performance
> of their official functions.

Ga. Const. Art. I, Sec. 2, Para. IX. See also Cameron, 549 S.E.2d 341 (2001)

(noting that "[u]nder Georgia law, a public officer or employee may be

personally liable only for ministerial acts negligently performed or acts

performed with malice or an intent to injure"). Plaintiff has not alleged that

Defendant Kellner was performing a ministerial function when he participated

in Plaintiff's arrest. Defendant Kellner is therefore entitled to official immunity,

unless Plaintiff shows that he acted with actual malice or an intent to injure

Plaintiff. See Taylor v. Waldo, 709 S.E.2d 278 (Ga. Ct. App. 2011).

Defendants argue: "Plaintiff merely makes a rather circular argument that

actual malice existed because Plaintiff was falsely arrested and falsely

imprisoned" and "Plaintiff does not allege any facts to support his contention

that Defendant Kellner acted with actual malice." (Def.'s Mem., [24] at 22.)

However, Plaintiff has alleged that Defendant Kellner arrested Plaintiff even

though "Defendant Kellner...knew he did not have probable cause." ([23] at 37,

45.) Further, Plaintiff has alleged that during the OPS inquiry, Defendant

21

Kellner declared it was his and Defendant Matteson's intent to arrest Plaintiff "regardless." ([23] at 20 ("Defendant Kellner replied that he and Defendant Matteson's intent was to 'get [Plaintiff] out of the street' on the night of his arrest, adding, '[r]egardless, [Plaintiff] would be arrested.'").)

Actual malice or intent to injure has been defined in Georgia as "a deliberate intention to do a wrongful act," Adams v. Hazelwood,, 520 S.E.2d 896, 898 (Ga. 1999), and intent to cause the harm suffered by the plaintiff. Taylor, 709 S.E.2d 278. The Court finds that Plaintiff's allegations demonstrate an intent to do a wrongful act such that Defendant Kellner is not entitled to official immunity on Plaintiff's state law and state constitutional claims. See Atlanta v. Shavers, 756 S.E.2d 204 (Ga. Ct. App. 2014) (jury could make reasonable inference that officer proceeding in arrest despite his knowledge that there was no probable cause for such arrest showed deliberate intention to do a wrongful act) ; see also Bateast v. DeKalb Cnty., 572 S.E.2d 756, 758 (Ga. Ct. App. 2002) (jury could make reasonable inference that officers "proceed[ing] in their arrest...despite their knowledge that [Plaintiff] had not committed the crimes for which they accused her...deliberately [intended] to do a wrongful act").  Having determined that Plaintiff's state claims against Defendant Kellner

22

are not barred by official immunity, the Court will address the merits of those claims.

2.     *False Imprisonment Claim*

Under Georgia law, false imprisonment is defined as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. "The essential elements of the claim are the arrest or the detention and the unlawfulness thereof." Kline v. KDB, Inc., 673 S.E.2d 516, 518 (Ga. Ct. App. 2009). An arrest is "the taking, seizing, or the detaining of the person of another...by any act indicating an intention to take such person into custody" and "which subjects such person to the actual control and will of the person making the arrest." Conoly v. Imperial Tobacco Co., 12 S.E.2d 398 (Ga. Ct. App. 1940).

In the context of warrantless arrests, an officer will be guilty of this tort unless he can justify the arrest under one of the exceptions enumerated in O.C.G.A. § 17-4-20. Collins v. Sadlo, 306 S.E.2d 390, 391 (Ga. Ct. App. 1983) (emphasis omitted) (citations and internal quotations omitted). Based on the exceptions in O.C.G.A. § 17-4-20, "it is readily apparent that all...exceptions to the warrant requirement...in essence presuppose the existence of sufficient

23

probable cause." Id. Thus, "to avoid liability for false imprisonment it must be shown not only that arrest was valid but also that the arresting officer had probable cause." Amason v. Kroger Co., 420 S.E.2d  314, 316 (Ga. Ct. App. 1992).

Here, Plaintiff has alleged that he was taken into custody by Defendants Matteson and Kellner and that Defendant Kellner knew he did not have probable cause to arrest Plaintiff. Accepting these allegations as true, as the Court must at this stage, the arrest was without probable cause and Defendants' motion to dismiss Plaintiff's false imprisonment claim is **DENIED**.

### 3.    *False/Malicious Arrest Claim*

"The elements of a false arrest claim include: (1) an arrest under the process of law, (2) without probable cause, and (3) made maliciously." Desmond v. Troncalli Mitsubishi, 532 S.E.2d 463, 467 (Ga. Ct. App. 2000). It is also  necessary "to show that the prosecution terminated in favor of the complaining party." Id. As stated above, Plaintiff has sufficiently alleged an arrest without probable cause, and that Defendants Matteson and Kellner acted with actual malice or intent to injure. Plaintiff has also alleged that the charges against him were dismissed. ([23] ¶ 91.) Therefore, Plaintiff has stated a

AO 72A
(Rev.8/82)

plausible claim for false/malicious arrest against Defendant Kellner and Defendants' motion to dismiss Plaintiff's claim for false/malicious arrest is **DENIED**.

### 4.      *State Constitution Arrest Abuse Claim*

Finally, Plaintiff alleges that Defendants Kellner and Matteson violated the Georgia Constitution by abusing him when he was arrested.  See Ga. Const. Art. I, Sec. I, Para. XVII ("[N]or shall any person be abused in being arrested, while under arrest, or in prison."). Plaintiff states that "[t]he abuse...was the act of Defendants Matteson and Kellner jointly."[8] ([23] at 207.) As Defendants note, however, "no evidence exists that Officer Kellner abused Plaintiff" because Plaintiff "has not alleged Officer Kellner had any physical contact with him." (Def.'s Mem., [24] at 20.)

Plaintiff's response appears to conflate his false arrest claim with his abuse during arrest claim. Georgia courts treat an arrest abuse claim like an

---

[8] To the extent Plaintiff alleges a conspiracy between the officers to commit this tort, that argument will not stand because there are no allegations regarding an agreement between the Defendants. See Bailey v. Bd. Of Cnty. Comm'rs., 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he lynchpin for conspiracy is agreement").

AO 72A
(Rev.8/82)

excessive force or battery claim. <u>See, e.g.,</u> <u>Cunningham v. State</u>, 471 S.E.2d 273 (Ga. Ct. App. 1996) (Beasley, C.J., concurring specially)(finding Ga. Const. Art. I, Sec. I, Para. XVII could support defendant's rights to defend against excessive force and noting "[t]he [Georgia] Bill of Rights...guards the lone arrestee from the unnecessary use of the physical power of the State"); <u>Long v. Jones</u>, 432 S.E.2d 593 (Ga. Ct. App. 1993) (Ga. Const. Art. I, Sec. I, Para. XVII provides an independent state ground for battery action).  The Court finds that Plaintiff has not alleged sufficient facts to show that Defendant Kellner physically abused him during the arrest. Therefore, Defendants' motion to dismiss Plaintiff's arrest abuse claim against Defendant Kellner is **GRANTED**.

## Conclusion

Based on the foregoing, Defendant's first Motion to Dismiss [14] is **DENIED as moot**.  Defendants' Motion to Dismiss [24] is **DENIED in part and GRANTED in part.** The following claims remain:

26

- Fourth Amendment  unreasonable search and seizure claim against Defendants City of Atlanta, Kellner, and Matteson;

- State-Law false imprisonment claim against Defendants Kellner and Matteson;

- State-Law false/malicious arrest claim against Defendants Kellner and Matteson;

- State-Law battery claim against Defendant Matteson;

- State-Law sexual battery claim against Defendant Matteson; and

- State constitution arrest abuse claim against Defendant Matteson.

**SO ORDERED**, this <u>2nd</u> day of July, 2014.

**RICHARD W. STORY**
United States District Judge

27